UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DE'CARLOS FREEMAN,

    Plaintiff,

v.                                     CAUSE NO. 3:23cv292 DRL-MGG

EATON CORPORATION *et al.*,

    Defendants.

## ORDER

Eaton Corporation and a host of individual defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). When De'Carlos Freeman failed to respond to the motion with the time allotted by local rule, the court ordered him to respond by September 7, if he wished to pursue this case. Nothing was filed, and the court has waited nearly a month more before ruling on the motion, and still there has been nothing filed by Mr. Freeman.

Mr. Freeman worked at Eaton Corporation as a forger. He filed an EEOC charge on January 22, 2023, claiming discrimination and harassment because of his race (Black) and disability (unidentified). He said he was suspended for being argumentative, though two other employees who were likewise argumentative never experienced any adverse employment action. He requested an accommodation too, but he explained Eaton never violated his restrictions set by his doctor's evaluation, though he nonetheless wanted to be placed on light duty.

His amended complaint, filed July 31, 2023, reading it liberally as the court must, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), endeavors to allege Title VII claims for discrimination, retaliation, and hostile environment, disability discrimination under the Americans with Disabilities Act, and state law claims for defamation and breach of contract. From the start, Mr. Freeman cannot sue the host of

individual employees for they are not the "employer" under Title VII or the ADA. *See, e.g., Passananti v. Cook Cnty.*, 689 F.3d 655, 662 n.4 (7th Cir. 2012); *Williams v. Banning*, 72 F.3d 552, 553-54 (7th Cir. 1995).

And the court need not address the state law contract and defamation claims so early in the case, pending here by virtue of supplemental jurisdiction, unless a federal claim sustains jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). So the early question, and the dispositive one as it turns out, is whether Mr. Freeman has alleged a plausible Title VII or ADA claim against Eaton—the only employer.

As best the court can tell from the amended complaint, Mr. Freeman alleges he asked Tom Litwicki (a Master Trainer) about turning in his Skill Block A in February 2019, and Mr. Litwicki advised Mr. Freeman that he had to get along with people. Mr. Freeman says this is what started the harassment, discrimination, defamation, and retaliation (though for the latter he never says what protected activity precipitated this alleged retaliation). Later that month, Mr. Litwicki ignited a fire (or two) in certain press machines with an air wand and then he and another employee tried to blame Mr. Freeman. Andrew Klein, a coach on the floor, questioned Mr. Freeman and suggested he needed more training.

This induced other employees to make Mr. Freeman a target of harassment, though that isn't described other than Mr. Klein told jokes with other employees. Another forger (Henry Barrier) swore and used coarse language as they worked together on a press, and also said "we can do this after work," which Mr. Freeman interpreted as a threat. Mr. Freeman alleges that Mr. Barrier should have been fired but was not. The human resources manager (Donna Cheek-Puls) investigated and determined that Mr. Barrier had not meant the statement as a threat.

Another coach (Tim Hughes) then began to criticize Mr. Freeman's work and his training and to crack jokes about his forger knowledge. Mr. Hughes likewise misplaced Mr. Freeman's Skill Block A. He alerted Mr. Freeman in 2020 that he only had a partial Skill Block A from Mr. Freeman. Later that

summer, Mr. Hughes told Mr. Freeman "quit bitching De'Carlos" when he complained about the work schedule. He says Mr. Hughes continued to hold his Skill Block A as harassment and retaliation.

In 2021, Mr. Freeman was asked about attendance issues, and he believes that Mr. Hughes reported several missed days in January of that year. Mr. Freeman contends that another worker (Jeremy Morton) had been absent, and Mr. Hughes was trying to cover for him and blame Mr. Freeman. In January 2021, he complained to human resources (Donna Cheek-Puls) and the production manager (Tyler Dozier), but both individuals sided with Mr. Hughes. Months passed, including in which employees criticized his work, until in December 2021 Mr. Freeman filed a complaint with human resources and requested a transfer to the second shift.

In March 2022, Mr. Freeman informed another employee that he believed another coworker had mental health issues given that he cursed at people for no reason, and he felt micromanaged by his new coach (Dustin Harlan)—a complaint he also made of his prior coach, Mr. Hughes. Mr. Harlan criticized Mr. Freeman's work on March 23, and both men swore at each other. Mr. Freeman was suspended for these comments. He later talked to the plant manager (Brad Doe) and complained of harassment and discrimination that he believed would not occur if he worked on second shift.

Although Mr. Freeman includes complaints about the treatment of others at the facility, including several Black employees, this summarizes his concerns with coworkers and management vis-à-vis his employment. On January 22, 2023, he filed an EEOC charge. On April 14, 2023, he filed this suit, eventually amending his complaint this past summer after a prior motion to dismiss.

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

3

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Steward Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

Although Mr. Freeman mentions a suspension, he offers no factual allegations that directly or inferentially connect this adverse action, or any other for that matter, to his race (Title VII) or disability (ADA). *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022). He offers no facts that make this viewpoint plausible—just the conclusion that it was "discrimination" or "harassment" or "retaliation." He likewise offers no facts that plausibly connect an adverse action to his protected activity to pursue a retaliation claim. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015). And for harassment, what he has described isn't an objectively hostile work environment. Yelling, criticism, and profanity certainly occurred—even on occasion by Mr. Freeman—but abusive and coarse language sporadically over four years (2019-2022) isn't cause for a Title VII claim. *See Villarruel v. Gary Cmty. Sch. Corp.*, 28 F. Appx. 564, 567 (7th Cir. 2002). The reality is that he says he was suspended for being argumentative, and he candidly confesses he was argumentative—and, among all his allegations, that permits no plausible inference of illegal race-based or disability-based action.

When a complaint fails to state a claim for relief, a plaintiff should ordinarily be given an opportunity, at least upon request, to amend the complaint to correct the problem if possible. *See* Fed. R. Civ. P. 15(a); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010); *Foster v. DeLuca*, 545 F.3d 582, 584-85 (7th Cir. 2008). Once a plaintiff has had one or more opportunities to cure the defects but fails, the court may dismiss claims with prejudice. *See Dittman v. ACS Human Servs. LLC*, 2017 U.S. Dist. LEXIS

29242, 14-15 (N.D. Ind. Mar. 1, 2017). The court dismisses the federal claims with prejudice and dismisses the state claims without prejudice.

As to the federal claims, Mr. Freeman has already enjoyed the right to amend in the face of a prior motion to dismiss that raised a similar point; and he declined to even respond to this second motion to dismiss, even after the court granted him an additional opportunity, suggesting to the court that he has no more to say in defense of his claims or cause to allege anything more. As to his state claims, without a federal claim to sustain jurisdiction, and without exceptional circumstances compelling the retention of jurisdiction over his remaining state claims, the court declines supplemental jurisdiction over the defamation and contract claims. *See* 28 U.S.C. § 1367(c)(3); *see also Carlsbad*, 556 U.S. at 639; *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994). At that point, they must be dismissed without prejudice.

Accordingly, the court GRANTS the motion to dismiss [20], dismissing the federal claims with prejudice and dismissing the state law claims without prejudice. This order terminates the case.

SO ORDERED.

October 5, 2023                                        *s/ Damon R. Leichty*
                                                       Judge, United States District Court